# In the United States Court of Federal Claims

No. 17-817C

(Filed: February 14, 2018)

* * * * * * * * * * * * * * * * * * * * * *

CRAIG PATTY and
CRAIG THOMAS EXPEDITORS, LLC,

        *Plaintiffs*,

v.

THE UNITED STATES,

        *Defendant*.

Takings Clause; U.S. Const. amend. V; Inverse condemnation due to property damage; Police Power Exception; Private property use; Private property damage.

* * * * * * * * * * * * * * * * * * * * * *

    *Arnold Anderson Vickery*, Houston, TX, with whom was *Earl Landers Vickery*, for plaintiffs.

    *Michael Anthony Rodriguez*, United States Department of Justice, Civil Division, Commercial Litigation Branch, Washington, DC, for defendant.

## OPINION

BRUGGINK, *Judge*.

    Plaintiffs, Craig Patty and Craig Thomas Expeditors, LLC, own a red 2006 Kenworth T600 truck that sustained damage during a Drug Enforcement Administration ("DEA") controlled drug delivery on November 21, 2011. Plaintiffs filed their complaint on June 16, 2017. They allege that the DEA effected a Fifth Amendment taking of their personal property without just compensation when it used plaintiffs' truck for a DEA operation.

Pending is defendant's motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims. Defendant construes the complaint as an assertion that the government's conduct was illegal, which, it argues, means that the predicate to a taking claim is missing. If plaintiffs challenge the legality of the seizure, the claim sounds in tort, a species of action over which the court admittedly does not have jurisdiction. In the alternative, defendant contends that it is entitled to judgment under Rule 12(b)(6) because the assertions of the complaint demonstrate that the DEA used the truck as an exercise of the police power of the United States, thereby precluding a taking claim. The motion is fully briefed, and we held oral argument on February 8, 2018. Because plaintiffs do not challenge the legality of the government's action, we deny the jurisdictional challenge. Because plaintiffs sufficiently allege actions which are inconsistent with the exercise of police power, we also deny the motion to dismiss under Rule 12(b)(6).

BACKGROUND[1]

Mr. Patty and his father formed a trucking company, Craig Thomas Expeditors, LLC, in July 2011. By September 2011, the growing business purchased a second truck, a red 2006 Kenworth T600. The LLC hired another driver, Lawrence Chapa, to drive the truck. At the time the LLC hired Mr. Chapa, Mr. Patty and the LLC were unaware that Mr. Chapa was, according to plaintiffs, a DEA confidential informant. During the period from November 1 to November 21, 2011, plaintiffs allege that Mr. Chapa used plaintiffs' truck in a law enforcement operation for the High Intensity Drug Trafficking Area ("HIDTA") task force without the knowledge or permission of the LLC.

In late November 2011, Mr. Chapa and members of the HIDTA task force arranged for Mr. Chapa to use plaintiffs' truck in an operation. Mr. Chapa would drive plaintiffs' truck to Rio Grande City, Texas, load the truck with contraband, and then drive the truck to Houston, Texas, to complete the transfer to purchasers. HIDTA officers planned to make arrests at the rendezvous point in Houston. Mr. Chapa did not inform plaintiffs of this plan. Instead, Mr. Chapa told plaintiffs that he would drive the truck to Houston for maintenance and repairs.

---

[1] These facts are drawn from plaintiffs' complaint and assumed to be correct for the purpose of ruling on the motion to dismiss.

As planned, Mr. Chapa drove the truck to Rio Grande City and loaded it. Mr. Chapa drove the truck to Houston, but he did not reach the rendezvous point. Instead, the truck was intercepted. A firefight ensued and Mr. Chapa was killed. Plaintiffs' truck was "wrecked and riddled with bullet holes." Pls.' Compl. ¶ 28. After the unsuccessful operation, the government impounded plaintiffs' truck and served Mr. Patty with a search warrant.

Plaintiffs allege their truck was out of service for approximately 100 days. The government did not compensate plaintiffs for using or damaging the truck. Mr. Patty filed an administrative tort claim against the government. After the requisite period of time had passed, the government informed Mr. Patty of his right to bring suit against the government under the Federal Tort Claims Act. Mr. Patty brought a claim in district court, but was unsuccessful. The district court granted summary judgment to the government under the Federal Tort Claims Act's discretionary function exception. *Patty v. United States*, No. H-13-3173, 2015 WL 1893584, at *1-2 (S.D. Tex. Apr. 27, 2015). Mr. Patty appealed to the United States Court of Appeal for the Fifth Circuit. The Fifth Circuit affirmed the district court. *Patty v. United States*, 633 F. App'x 238 (5th Cir. 2016) (unreported). Mr. Patty filed a petition for certiorari in the Supreme Court of the United States, which the Supreme Court denied. *Patty v. United States*, 137 S. Ct. 332 (Oct. 17, 2016). On June 16, 2017, Mr. Patty turned to the United States Court of Federal Claims, filing this claim for just compensation for a Fifth Amendment taking.

## DISCUSSION

Plaintiffs allege that by using their truck the government took their property for public use without just compensation. Defendant first argues that this court does not have jurisdiction over plaintiffs' claim because plaintiffs allege that the DEA operation was unlawful, and thus plaintiffs' claim is one for damages from tortious government action rather than for just compensation under the Fifth Amendment. Defendant is correct that this court does not have jurisdiction over tort claims, and, if that were the gist of plaintiffs' claim, it would be outside the court's jurisdiction. *See Rith Energy, Inc. v. United States*, 270 F.3d 1347, 1352 (Fed. Cir. 2001). Indeed plaintiffs have unsuccessfully pursued an action under the Federal Tort Claims Act.

Defendant relies in part on the fact that plaintiffs assert that the agency's use of their truck was without permission and an unjustified risk to

3

private property and to the lives of those involved in the LLC. Pls.' Compl. ¶¶ 2, 17, 18, 21. But an assertion of lack of consent to the use is not the same as an assertion of illegality. More importantly, it is not inconsistent with the assertion of a taking. Condemnation actions, whether direct or implied, typically are done over the property owner's objection. At oral argument and in their reply brief, plaintiffs are explicit in disavowing an assertion of illegality. Although some of the damages asserted sound more in tort than takings, that fine point will be resolved assuming there is liability and we move on to damages. We have jurisdiction over plaintiffs' assertion of a taking of private property without just compensation.

The second prong of defendant's motion to dismiss is that the facts asserted demonstrate on their face that the agency was acting within the government's inherent police power. The Supreme Court has long taught that the Takings Clause is not implicated when the government exercises its police power. *See Mugler v. Kansas*, 123 U.S. 623 (1887). Yet when analyzing how far "the police power can be stretched," the Supreme Court has warned, "When this seemingly absolute protection is found to be qualified by the police power, the natural tendency of human nature is to extend the qualification more and more until at last private property disappears. But that cannot be accomplished in this way under the Constitution of the United States." *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922).

The distinction between an exercise of the police power and a constitutional taking has been characterized since *Mugler* as "whether the governmental action operates to secure a benefit for or to prevent a harm to the public." *Morton Thiokol, Inc. v. United States*, 4 Cl. Ct. 625, 630 (1984). When determining whether government action constitutes an exercise of the police power, the relevant inquiry is the character of the government's action in light of the particular facts of the case. *Penn Central Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978).

This case presents the question of whether the government's use of plaintiffs' truck in a controlled drug delivery (which led to the truck being damaged and impounded) constitutes an exercise of the police power or a constitutional taking. Because the character of the government's action in this case differs from the circumstances involved in cases where the court held that government action was an exercise of the police power, we hold that plaintiffs have stated a claim for a constitutional taking and deny defendant's motion to

dismiss.

To state a taking claim, plaintiffs must demonstrate that they have a property interest to assert and that the government physically or by regulation infringed on that interest for public use. Plaintiffs' complaint asserts a property interest in the LLC's red T600 truck. Accepting plaintiffs' recitation of facts as true, the government took possession of and used the truck, depriving plaintiffs of the right to exclude the government from using the vehicle. Defendant's argument regarding public use, however, is straightforward: when law enforcement officials seize and retain property in the course of enforcing criminal law, the government exercises its police power rather than taking property for public use.

Plaintiffs point to a distinction, however, between the cases defendant cites and their allegations. In the cases defendant relies on, the law enforcement officials exercised their authority to investigate, arrest, seize, impound, subject to forfeiture, or otherwise enforce criminal law. The government's action uniformly was directed toward property that was related to the law enforcement activity or was the subject of investigation. In *AmeriSource Corp. v. United States*, the United States Attorney seized drugs to use as evidence against a pharmaceuticals buyer charged with "'conspiracy, unlawful distribution of prescription pharmaceuticals, operating an unregistered drug facility, and conspiracy to commit money laundering.'" 75 Fed. Cl. 743, 744 (2007). In *Kam-Almaz v. United States*, an ICE agent, who was acting as a Customs agent with the authority to seize and inspect property entering the United States, seized the laptop from the subject of an ICE investigation. 682 F.3d 1364, 1366-67 (Fed. Cir. 2012). In *Bennis v. Michigan*, the county prosecutor filed an abatement complaint regarding a vehicle involved in illegal activity and which constituted a public nuisance under Michigan law. 516 U.S. 442, 443-44 (1996). In *Scope Enterprises, Ltd. v. United States*, which involved a sting operation, the Customs Service repossessed illegal technology and refused to return the funds to plaintiff that engaged in the illegal transaction with Customs undercover agents. 18 Cl. Ct. 875 (1989); *see also Husband v. United States*, 90 Fed. Cl. 29 (2009) (United States Marshal Service in custodial possession of plaintiff's ring during his detention); *Alde, S.A. v. United States*, 28 Fed. Cl. 26 (1993) (Customs Service seized an aircraft for failure to request landing rights for the aircraft); *Jarboe-Lackey Feedlots, Inc. v. United States*, 7 Cl. Ct. 329 (1985) (United States Marshal seized beef and offal subject to a seizure and condemnation action for

violation of a FDA regulations).  In each of these cases, the property was evidence in an investigation or the object of the law enforcement action.  In none of them did the government simply seize property as a convenience to the government in pursuing unrelated law enforcement.

If defendant's position is the law, the police power would swallow private property whole.  Neither plaintiffs nor their truck were the subject of an investigation,their truck did not belong to a person who was the subject of an investigation, nor was it related, before the fact, to any violation of regulation or statute.  Plaintiffs emphasize that neither the LCC nor Mr. Patty had any connection to or dealings with criminal outfits in the state of Texas and that, had it not been for their driver working with the DEA, their truck would have never been involved in the operation.[2]  The government instead chose to use plaintiffs' property as a tool to stage a controlled drug delivery.

Plaintiffs contrast instances in which law enforcement officials seized property related to enforcing criminal law with those in which courts required the government pay just compensation for appropriating a benefit from a private property.  Plaintiffs point to *Textainer Equip. Mgmt. Ltd. v. United States*, 115 Fed. Cl. 708, 717-18 (2014), in which this court held that the government took plaintiff's property by "appropriate[ing] [plaintiff's] containers for a public benefit in the form of continued military use" after the government's lease had expired.  The court harkened back to *Argent v. United States*, 124 F.3d 1277, 1218 (Fed. Cir. 1997), in which the Federal Circuit held that "military conduct that appropriates private property for its use is recognized as giving rise to a taking."  *Id.*  In *Argent*, the Federal Circuit

---

[2] The relevant fact is not that plaintiffs were innocent bystanders to the DEA operation, but rather that the government's action is disconnected from exercising the police power in relation to plaintiffs' property.  The Takings Clause is concerned with "the character of the government action," and "[t]he innocence of the property owner does not factor into the determination." *AmeriSource*, 525 F.3d 1149, 1154 (Fed. Cir. 2008) (AmeriSource was not the subject of the criminal investigation, but the police exercised the police power by seizing the pharmaceuticals); *see also Bennis*, 516 U.S. at 443 (wife's innocent bystander status to her husband's illegal behavior in vehicle irrelevant to takings analysis); *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 665 (1974) (yacht owner's innocence in lessee's possession of controlled substances while aboard his yacht irrelevant to takings analysis).

"consider[ed] the viability of a takings claim based on frequent flights at low altitudes over and around the plaintiffs' property" by the Navy. 124 F.3d at 1282. Despite the Navy flight training not flying directly over plaintiffs' property, as had been the facts in previous cases, the Federal Circuit reasoned that plaintiffs alleging "a peculiar burden imposed on landowners surrounding the site selected for naval training" was sufficient to plead a taking for a public purpose. *Id.* at 1283.

The Supreme Court has also recognized a taking for which just compensation is due when the Army used a private laundry company beyond ordinary wear and tear, *Kimball Laundry Co. v. United States*, 338 U.S. 1, 4 (1949), and for operating losses when the federal government seized a coal mine during a strike, *United States v. Pewee Coal Co.*, 341 U.S. 114 (1951). When the FBI took over operation of a private business in order to carry out a sting operation in *Janowsky v. United States*, 133 F.3d 888, 892 (Fed. Cir. 1998), the Federal Circuit reversed the summary judgment for the government on the taking claim with instructions to consider the factual issues surrounding whether plaintiff voluntarily participated in the FBI's operation. *See also Otay Mesa Prop. L.P. v. United States*, 670 F.3d 1358, 1365 (Fed. Cir. 2012) (holding that "Border Patrol's blanket easement to install, maintain, and service sensors on Otay Mesa's property constituted a permanent physical taking"); *Hendler v. United States*, 952 F.2d 1364, 1367 (Fed. Cir. 1991) (holding that "the Government's enlistment of plaintiffs' property, without plaintiffs' consent, in the battle against pollution" effected a taking). These cases suggest that there is a difference between government action that merely appropriates a benefit from unoffending private property and the government seizing private property that is a nuisance, caught up in criminal activity, or somehow related to an investigation.

It is also telling that the Federal Circuit has limited its holdings that law enforcement officials use the police power to seize and retain property without implicating the Fifth Amendment to situations in which the property is "to be used as evidence in a criminal prosecution," *AmeriSource*, 525 F.3d at 1153, or "[w]hen property has been seized pursuant to the criminal laws or subjected to *in rem* forfeiture proceedings . . . ." *Acadia Tech., Inc. v. United States*, 458 F.3d 1327, 1331 (Fed. Cir. 2006). The Federal Circuit indeed noted in *AmeriSource* that the ability to seize and retain property to be used as evidence without implicating the Takings Clause was "not merely for the convenience of the government," but rather to ensure that the government could comply

CONCLUSION

with the rule of law when proving its case. 525 F.3d at 1153 n.4. Similarly, in *Kam-Almaz*, the Federal Circuit wrote that the police power necessarily includes lawful seizures performed pursuant to Customs' authority to police the border. 682 F.3d at 1372.

Plaintiffs' claim bears striking similarities to cases in which the government has chosen simply to appropriate private property to secure a benefit for the public. Here, the assertion is that law enforcement officials used private property as a resource for an operation despite lack of consent of the property owner. Using the dichotomy of whether the government action prevented harm to the public or secured a benefit to the public, the government's action falls within the latter category: it did not seize the truck to prevent a harm to the public caused by or related to the truck or anyone associated with it, but rather the agency chose to use the truck as a resource in ridding the area of controlled substances and criminal activity. It could just as easily have rented a truck and furnished it to Mr. Chapa. Plaintiffs' truck was not evidence in a criminal prosecution, involved in a police investigation, seized pursuant to criminal laws, or subject to forfeiture proceedings. If what the DEA is alleged to have done here were not compensable, then presumably it could have seized a fleet of trucks or an airplane for the same use.

The Fifth Amendment protection is "designed to bar [the] Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States*, 364 U.S. 40, 49 (1960). The dispositive fact is that the government appropriated private property that was not otherwise implicated in criminal violations to use as a tool in a law enforcement operation. Plaintiffs allege that the government involuntarily imposed on them an obligation that should have been shared by the public at large. The use of the truck merely as a convenience to investigate and hopefully arrest individuals purchasing controlled substances that threaten the health, welfare, and safety of the public is sufficient to plead a public purpose. At this stage, we do not judge the sufficiency of evidence to prove that a taking occurred, but we are not persuaded that the alleged appropriation here of private property for a controlled drug delivery falls within an exercise of the police power. Plaintiffs have stated a claim under the Fifth Amendment.

CONCLUSION

Because plaintiffs have stated facts sufficient to demonstrate that the government physically deprived them of property for the duration of the controlled drug delivery operation, we hold that plaintiffs have stated a claim for a taking compensable under the Fifth Amendment.  We therefore deny defendant's motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6).

s/Eric G. Bruggink
Eric G. Bruggink
Senior Judge